560 So.2d 176 (1990)
Ginger A. Woods STEVISON
v.
Thomas A. WOODS.
Nos. 07-CA-58652, 89-CA-0445.
Supreme Court of Mississippi.
April 11, 1990.
John W. Christopher, Canton, Carroll H. Ingram, Mize Ingram Matthews Stroud & Lenoir, and Michael V. Ratliff, Mize Ingram Firm, Hattiesburg, for appellant.
Stanley F. Stater, III, Stater Law Office, Canton, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ.
*177 SULLIVAN, Justice, for the Court:
Two cases have been consolidated for this appeal.
On May 13, 1987, Ginger A. Woods Stevison and Thomas A. Woods were divorced in the Chancery Court of Madison County, Mississippi. Two children were born to the marriage, Timothy and Amy, 13 and 8 years old, respectively, at the time of the divorce. The Settlement Agreement split custody, providing custody of Timothy in Thomas (Tom) and custody of Amy in Ginger. Reasonable visitation rights were provided for in the agreement.
Visitation rights were established between the parties as follows:
(a) Wife shall have reasonable rights of visitation with Timothy Andrew Woods which shall be no less than the following:
The child shall visit with the wife from 6:00 o'clock P.M. on Friday until 6:00 o'clock P.M. on Sunday of every other weekend. In addition the wife shall have said child visit with her for four weeks during the summer months with two weeks of said visitation to be during the month of June and two weeks of said visitation to be during August.
(b) Husband shall have reasonable rights of visitation with Amy Michelle Woods, which shall be no less than the following:
Husband shall have said minor daughter visit with him from 6:00 o'clock P.M. on Friday until 6:00 o'clock P.M. on Sunday every other weekend ... In addition Husband shall have four weeks of visitation with said child during the summer months with two weeks of said visitation to take place during the months of June and July or August, depending upon the schedule of husband, wife and the children... .
(c) It is further agreed that on Mother's Day both children will be with the wife and on Father's Day both children will be with the Husband. The parties further agree that on the holidays of Easter, Thanksgiving and Christmas both children will be together and will alternate those holidays between husband and wife... .
This visitation schedule was arranged so the children would spend weekends with one another and their respective parent.
Following the divorce, Tom kept extensive contact with Ginger and Amy. He called every morning at 7:00 a.m. and usually every night at 8:30 p.m. If no one answered he went over to Ginger's apartment.
Ginger had a few days vacation and decided to get away from Tom. She and Amy left Wednesday, June 17, 1987, headed for Alaska. She wanted to get away from the phone calls, planning to be at work the following Monday. But, as it turned out, she married Frank Stevison on June 25, 1987, and stayed in Alaska.
Ginger was mentally and physically drained which was attributable to Tom's harassment. She was on the verge of a nervous breakdown. Physical manifestations of this distress were a loss of appetite, insomnia, and hives. Ginger was cross-examined extensively about the propriety of her quick marriage to a friend she had known from college. Her testimony was that she started to communicate by phone with Frank in November of 1986, after Tom and she had separated. Frank had family in Mississippi and she thought he might move back some day.
Frank Stevison worked as the area manager of a marine survey company, SGS Control Service, in Alaska. Ginger quit her job and did not obtain new employment. Frank was more than willing to assist in the financial support required for Amy.
Tom acquired Ginger's telephone number in Alaska by securing a Subpoena Duces Tecum requiring the phone company to produce phone bills. Ginger told Tom not to call every night. Tom was always able to talk to Amy but was unable to talk with her about any of the particulars or concerns in terms of legal activity. During one conversation, he told Amy that he was looking for her and would do whatever possible to find her. Ginger hung the phone up on him. She started to limit the *178 time Tom could call to Wednesday and Sunday nights.
Ginger's contact with her son, Timothy, after the move to Alaska was infrequent. Timothy addressed her as "Ginger."
Initially, considering the divorce agreement in conjunction with the parties geographic dimensions, the children could see one another on a regular and continual basis. However, after Ginger's move to Alaska, this was no longer possible. So, on July 17, 1987, Tom filed a motion in the Chancery Court of Madison County for modification of child custody and contempt of court. He asserted that he was effectively deprived of his visitation rights and that he should be awarded custody of Amy.
Chancellor Ray Montgomery modified child custody and found Ginger in contempt of court. Specifically, he granted Tom custody of Amy, finding a "material change in circumstances" that "adversely affected" Amy's welfare in Ginger's relocation to Alaska coupled with the manner and time which the relocation took place. He found Ginger's relocation and decision to remarry a "willful, conscious decision on her part, therefore, the Defendant is in civil contempt of this Court's order for failing to abide by the judgment of the Court in regard to the custody and visitation of the minor children of the parties."
Ginger was granted visitation rights with Amy corresponding to her original visitation rights with Timothy. There was no modification of visitation to take into account the distance between the parties. Visitation was every other weekend, alternating holidays plus four weeks in the summer; two weeks in June and two weeks in August. The chancellor suspended the jail time because Amy was returned to Mississippi under summons.
Subsequently, on March 24, 1988, Ginger filed suit in the Madison County Chancery Court requesting a modification of child custody and contempt of court against Tom. Ginger alleged "material change in circumstance" which warranted the change of custody of Amy and Timothy.
On July 28, 1988, Ginger filed an amended motion of citation of contempt because Tom had denied her visitation with her children. In August of 1988, Tom filed a counter-claim to hold Ginger in contempt of court and for child support. He alleged Ginger to be in contempt of court for not signing a contract of sale on the former marital residence and for not maintaining health insurance on the children in violation of the divorce decree.
Ginger and Frank have remained happily married in Alaska from the time of the first hearing until the second trial. Ginger was employed with Ed Warfle Real Estate Appraisers as a secretary. But she had a tremendous amount of trouble in her long-distance relations with the children.
Tom had an answering machine which Ginger had to go through to talk with the children. Tom would monitor the conversation over a speaker phone. Her conversations were brief and restricted to a certain number per week, only on Wednesday and Sunday.
Ginger kept a log of her attempts to communicate with the children. It began July 31, 1987. She outlined her contacts with the children almost every day during the months of August, September, October, November, and December of 1987. Her actual conversation with the children were very infrequent. Ginger also kept logs of her attempts to contact Amy and Timothy during the months of January, February, March, May, June, and July of 1988.
Ginger did visit with Timothy and Amy on October 1, 1987, through October 4, 1987. Tom conditioned her visit with the children. She had to give him some of her bedroom furniture and produce proof of medical coverage. Both conditions, of which, she complied.
She also flew to Mississippi for Christmas on December 15, 1987. She picked up the children on the 18th and took them to her parents' home. Ginger flew back to Alaska and has not been able to visit with the children since that time.
When she next called the children on January 1, 1988, the phone had been disconnected. On January 4, 1988, her attorney advised her that Tom had moved to Charlottesville, Virginia. Ginger, upon acquiring *179 the new phone number, called the children but Tom would not allow her to speak with the children.
Tom moved to obtain a better career position and he was pursuing a master's degree in Charlottesville. He accepted employment with Piedmont, Virginia Community College, as Program Director of Respiratory Therapy.
During the following month, Ginger was unable to talk frequently to the children. On the few occasions she did talk to them their responses were guarded and strained, and over a speaker phone. They would not respond to her questions and she was unable to obtain information about their environment, grades, school activity, health or education.
Tom's testimony concerning Timothy's rebellious and hostile attitude towards his mother was because Timothy was concerned that he would be separated from his sister again. Tom has never done anything to turn the children against their mother, but does not encourage them to call or have a close relationship with their mother. All contacts between Tom and Ginger were through their respective lawyers.
Ginger wanted to exercise her visitation rights with the children in the summer of 1988. Several letters were sent by her attorney regarding her visitation but nothing materialized. Tom had no objections with the children visiting their mother in Alaska but did not want them to travel alone without an adult. The flight to Alaska required several plane changes and he was scared they would miss a flight. Tom also stated he would be concerned about the children's safety with Ginger but did not mind if they visited with her as long as their safety was insured with a stipulated kind of control.
Prior to the judgment on her petition, Ginger moved back to Mississippi with her new husband and filed a Motion to Reconsider with the Chancery Court concerning her visitation rights. She requested a change in the visitation rights which both parties acknowledged were unworkable. The chancellor denied Ginger's modification request for visitation and child custody. Ginger "presently has the same visitation schedule with the children as Thomas Woods had when she had custody of Amy Michelle Woods, and it is her choice to exercise those visits or not." Tom was found to be in contempt of court for violating the original divorce decree.
Ginger appeals from both of the chancellor's rulings as follows:
I. IT WAS MANIFEST ERROR FOR THE COURT TO MODIFY ITS FORMER JUDGMENT AND CHANGE CUSTODY OF THE MINOR DAUGHTER OF THE PARTIES;
II. IT WAS MANIFEST ERROR FOR THE COURT TO FIND AND ADJUDICATE GINGER STEVISON TO BE IN CONTEMPT OF COURT;
III. IT WAS MANIFEST ERROR FOR THE COURT TO FAIL TO SPECIFICALLY PROVIDE A REASONABLE SCHEDULE FOR VISITATION IN LIGHT OF THE CIRCUMSTANCES EXISTING AT THE TIME OF THE HEARING;
IV. THE COURT ERRED IN FAILING TO CHANGE CUSTODY OF THE CHILDREN FROM MR. WOODS TO MRS. STEVISON; AND
V. THE COURT ERRED IN FAILING TO MODIFY MRS. STEVISON'S VISITATION RIGHTS TO PROVIDE FOR WORKABLE, MEANINGFUL VISITATION WITH THE CHILDREN.
Tom filed a cross-appeal alleging as follows:
VI. THE CHANCELLOR WAS MANIFESTLY IN ERROR AND ABUSED HIS DISCRETION IN FINDING THE APPELLEE/CROSS-APPELLANT IN CONTEMPT OF COURT FOR FAILURE TO REIMBURSE APPELLANT/CROSS-APPELLEE FOR HEALTH INSURANCE PREMIUMS ON THE MINOR SON OF THE PARTIES.

I.

WAS IT MANIFEST ERROR FOR THE COURT TO MODIFY ITS FORMER JUDGMENT AND CHANGE CUSTODY OF THE MINOR DAUGHTER OF THE PARTIES?
There are two prerequisites to modification of child custody. First, the moving *180 party must prove by a preponderance of the evidence, after the entry of the judgment sought to be modified, there has been a material change in circumstances which adversely affects the welfare of the child. Second, if such an adverse change has been shown, the moving party must show by like evidence the best interest of the child requires the change of custody. Pace v. Owens, 511 So.2d 489 (Miss. 1987).
This Court's scope of review is limited by the substantial evidence or manifest error rule. Dunaway v. Busbin, 498 So.2d 1218 (Miss. 1986). Therefore, the chancellor's decision to modify child custody of Amy from Ginger to Tom, cannot be overturned unless "manifest error" is shown.
The thrust of the testimony concerned a material change in circumstance consisting of the move to Alaska which adversely affected Amy. This Court in Cheek v. Ricker, 431 So.2d 1139 (Miss. 1983), held that relocation of the custodial parent is not a "material change" in circumstances to substantiate a change in custody.
This Court stated in pertinent part as follows:
In February of 1980 Pamela and Chase moved to Houston, Texas. No doubt this created a certain strain on Hollis' visitation privileges and on Chase's access to his father's love. Yet in this day and time many persons must change their residence, sometime even cross-country in order to obtain suitable employment, and for other bona fide reasons. Surely it must be the law that such a change of residence by the person having custody is not a material change in circumstances which would justify a reconsideration of an order for primary custody.
Id. at 1144.
In Pearson v. Pearson, 458 So.2d 711 (Miss. 1984), this Court stated that when the custodial parent's employment or livelihood requires a transfer to another state it does not constitute a change in circumstances which would adversely effect the children, under ordinary conditions. In Spain v. Holland, 483 So.2d 318 (Miss. 1986), this Court again addressed the issue about relocation of the custodial parent. This Court dealing with the "adverse effects" stated as follows:
The judicial eye in such a case searches for adverse effects beyond those created (a) by the divorce and (b) by the geographical separation from one parent. ... We regard as legally irrelevant to the matter of permanent custody the fact that taking the children to a distant state effectively curtails the non-custodial parent's visitation rights... . We do not foreclose the consideration by our trial courts of peculiar or unusual circumstances adversely affecting the children over and above the effect attendant upon the mere increase in miles between the children and the non-custodial parent. (Emphasis added).
Id. at 321.
Here, the change in custody fits within the "unusual circumstances" exception in Spain v. Holland. The unusual circumstances in this case being split custody, and Ginger and her son's poor relations. Amy, prior to the move, visited with her brother every day. Ginger's move to Alaska surely had an "adverse effect" on Amy. The chancellor was not "manifestly wrong" in modifying child custody.

II.

WAS IT MANIFEST ERROR FOR THE COURT TO FIND AND ADJUDICATE GINGER STEVISON TO BE IN CONTEMPT OF COURT?
Ginger was held in contempt of court for effectively curtailing Tom's court ordered visitation rights by moving to Alaska. In Cooper v. Keyes, 510 So.2d 518 (Miss. 1987), this Court stated that a citation for contempt is proper only when the contemner has willfully and deliberately ignored the order or the court.
The chancellor was "manifestly in error" when he found Ginger in contempt of court. Ginger did not ever ignore an order of the court. There was nothing in the *181 court order that restricted her from moving to another state.

III.

WAS IT MANIFEST ERROR FOR THE COURT TO FAIL TO SPECIFICALLY PROVIDE A REASONABLE SCHEDULE FOR VISITATION IN LIGHT OF THE CIRCUMSTANCES EXISTING AT THE TIME OF THE HEARING?
Ginger asserts that the chancellor was "manifestly in error" in failing to provide adequate visitation for her. The record shows Kenai, Alaska, to be approximately 4,500 miles from Ridgeland, Mississippi. This distance increased with the children's move to Virginia. However, it should be kept in mind that Ginger and Frank moved back to Mississippi.
By far the most serious issue here concerns the chancellor denying modification of visitation rights. Both Tom and Ginger testified that the current visitation rights were not working. Non-custodial parents are entitled to reasonable visitation rights with their children. Gatlin v. Gatlin, 248 Miss. 868, 161 So.2d 782 (1964). Visitation privileges should be reasonable and appropriate fostering a positive and harmonious relationship between the children and parent.
It is in the "best interest" of Timothy and Amy to have extensive visitation with their mother. Tom tried to exclude Ginger from their lives which is certainly detrimental. Ginger needs time with the children to develop a trusting and loving relationship.
Ginger has moved back to Mississippi and both sets of grandparents live in Mississippi. It would be reasonable to provide Ginger with visitation during the entire summer months. However, this case is remanded to the chancellor for a determination of reasonable visitation to be consistent with this opinion.
Ginger should be responsible for the cost of visitation because Tom provides for the children otherwise.

IV.

WAS THE CHANCELLOR IN ERROR BY FAILING TO CHANGE CUSTODY OF TIMOTHY AND AMY FROM MR. THOMAS WOODS TO MRS. GINGER STEVISON?
The legal analysis is provided supra. Again, the chancellor was not "manifestly in error" in refusing to modify the custody of Timothy and Amy from Tom to Ginger.
It is Ginger's argument that divorced parents should encourage their children to have a close affectionate parent-child relationship. She asserts that Tom's activity certainly was not conducive to a normal relation between Ginger and her children.
This being conceded, she still has not met the test to change custody. Tom's activities were very iniquitous and hurtful to the children. But Ginger needed to show a material change in circumstances that adversely affected the children. This she has failed to do.

V.

WAS THE CHANCELLOR MANIFESTLY IN ERROR ABUSING HIS DISCRETION IN FINDING MR. THOMAS WOODS IN CONTEMPT OF COURT FOR HIS FAILURE TO REIMBURSE MRS. GINGER STEVISON FOR HEALTH INSURANCE PREMIUMS SHE PAID FOR THEIR SON?
Tom filed a cross-appeal for the chancellor finding him in contempt of court for not paying Ginger monies due her under the original divorce decree.
The original judgment for divorce provided that Ginger was to purchase insurance on both Ginger and Timothy and that Tom was to reimburse Ginger for "... that part of the premium allocated to the minor son, Timothy Andrew Woods... ."
Tom failed to comply with this provision. He stated that there was no clear finding on what he must do to purge himself of the contempt and that he had obtained health insurance on the children's behalf and should be absolved of any responsibility to *182 reimburse Ginger for any insurance she obtained.
The judgment required Tom to reimburse Ginger for Timothy's premiums and this he has failed to do. The lower court was correct in holding Tom in contempt.
CHANGE OF CUSTODY AFFIRMED; CONTEMPT OF GINGER STEVISON REVERSED AND RENDERED; MODIFICATION OF VISITATION RIGHTS REVERSED AND REMANDED; CONTEMPT OF THOMAS WOODS AFFIRMED.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART; AND REVERSED AND RENDERED IN PART ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON and PITTMAN, JJ., concur.
BLASS, J., not participating.