## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1998-CA-01652-SCT

*DOYLE FRAZIER SUMRALL*

*v.*

*DONNA JEFFERYS SUMRALL MUNGUIA*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/1998 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CARRIE A. JOURDAN |
| ATTORNEY FOR APPELLEE: | JAMES C. HELVESTON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 4/13/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/4/2000 |

### BEFORE PITTMAN AND BANKS, P.JJ., AND MILLS, J.

### PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. This is an appeal from the Chancery Court of Lowndes County where Dr. Doyle Sumrall ("Sumrall") was allowed a decrease in the amount of monthly child support he should pay to his ex-wife, Donna Munguia ("Munguia"). Specifically, Sumrall appeals the chancellor's decision that Sumrall pay Munguia the sum of $1,200 per month for the months of January, May, June, July, August, and December of each year. Sumrall maintains the chancellor should have awarded child support only for the months of June, July, and August, when the minor children are not attending college and reside in the home with their mother.

### STATEMENT OF FACTS

¶2. Sumrall and Munguia were divorced in Lowndes County Chancery Court in June, 1983. At the time of the divorce, there were two minor children of the marriage, Heather, born December 4, 1976, and Bradley, born January 5, 1979.

¶3. By Sumrall's own admission, he has petitioned the court four times for modification of the divorce decree. In November, 1994, Sumrall petitioned the court for declaratory relief concerning the college expenses of Heather, the oldest child. The chancellor ordered that Sumrall would be responsible for a

"maximum of $8,000 per year in tuition, room, and board as the reasonable costs of college education for Heather." The chancellor also allowed Sumrall to deduct any scholarships Heather received from the amount he owed (absent any PGA scholarship). Sumrall was also ordered to pay $1,250 per year for college incidentals, $1,200 per year for clothing, and a one-time startup expense of $2,220.

¶4. In 1996, Munguia filed a motion for modification of the divorce decree seeking an increase in Sumrall's monthly child support payments. At the time of the divorce in 1983, Sumrall agreed to pay Munguia $1,200 per month in child support. This amount was still being paid to Munguia at the time of the motion for modification was made. The chancellor denied the motion to increase the support, noting the "reasonable needs of the children, the financial condition of both parents, and the fact that one of the children is only residing with the mother on school holidays and the summers" did not warrant modification.

¶5. In the summer of 1997, Sumrall filed a motion for declaratory relief and for a modification of the divorce decree. Sumrall sought an accounting of Bradley's college expenses. He also asked the court to further clarify its ruling regarding increases in the college expenses he was paying on behalf of Heather. Sumrall requested a decrease in the amount of child support he was required to pay.

¶6. Before the trial on this matter, Sumrall paid Bradley's college expenses using the guidelines set forth by the court regarding Heather's college expenses. Sumrall paid all of Bradley's tuition expenses, including books, room and board. Sumrall also paid $2,200 in startup costs, $1,200 for clothing, and $1,250 for college incidentals.

¶7. Both Sumrall and Munguia agreed that these were reasonable college expenses. Sumrall and Munguia also reached an agreement regarding tuition increases.

¶8. At trial, it was established that both Heather and Bradley attend school full-time. Bradley resides on campus, while Heather has an off-campus apartment. Heather attended summer school in 1997. Sumrall and Munguia admitted that Sumrall has paid college expenses for both children including tuition, books, clothing, housing, and meals. Both Sumrall and Munguia submitted information regarding their financial status.

¶9. Sumrall asked the court to decrease the amount of child support that he was required to pay Munguia. He noted that the children lived away from their mother's home nine months of the year. Sumrall argued that this fact, coupled with his payments of college expenses, constituted a material change in circumstances that entitled him to a decrease in child support. Sumrall also argued that the parties, in the original divorce decree, included language that was designed to give Sumrall an offset against child support for the amount of college expenses he paid on behalf of the children.

¶10. Munguia vigorously opposed this motion for modification. Munguia argues that she was in the middle of a second divorce and nearly destitute. According to Munguia, she and the children were no longer able to enjoy the standard of living to which they had become accustomed.

¶11. The chancery court found that both Heather and Bradley did live away from home during the school year. The court also found that Sumrall was paying all their expenses while they were away from their mother's home. The court ruled that a material change in circumstances had occurred, warranting a decrease in child support. Specifically, the chancellor ordered Sumrall to pay child support during the months of January, May, June, July, August, and December. The chancellor declined to rule on the issue of

reducing child support when Heather reached age 22, the issue not being ripe for consideration.

## STATEMENT OF ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN DETERMINING SUMRALL SHOULD PAY CHILD SUPPORT FOR SIX MONTHS INSTEAD OF THREE MONTHS.**

**II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GIVE SUMRALL A CREDIT FOR OVERPAYMENT OF CHILD SUPPORT RETROACTIVE TO BRADLEY'S ENROLLMENT IN COLLEGE.III. WHETHER THE TRIAL COURT ERRED IN FAILING TO RULE WHETHER THERE WOULD BE A REDUCTION IN CHILD SUPPORT WHEN HEATHER REACHED AGE 22, WHICH WOULD OCCUR FOUR MONTHS FROM THE TIME OF THE TRIAL COURT'S RULING.**

## STANDARD OF REVIEW

¶12. The standard of review in domestic relations cases is well-settled:

> Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990). "This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). See also Ferguson v. Ferguson, 639 So.2d 921 (Miss.1994); Faries v. Faries, 607 So.2d 1204, 1208 (Miss.1992). In other words, "[o]n appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." Newsom v. Newsom, )557 So.2d 511, 514 (Miss.1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986). This is particularly true in the areas of divorce, alimony and child support. Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989). The word "manifest," as defined in this context, means "unmistakable, clear, plain, or indisputable." Black's Law Dictionary 963 (6th ed.1990). Turpin v. Turpin, 699 So.2d 560, 564 (Miss.1997) (quoting Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995)).

*Clark v. Clark*, No. 98-CA-00404-SCT, 1999 WL 1000707 (Miss. Nov. 4, 1999).

## DISCUSSION OF LAW

**I. WHETHER THE TRIAL COURT ERRED IN DETERMINING SUMRALL SHOULD PAY CHILD SUPPORT FOR SIX MONTHS INSTEAD OF THREE MONTHS.**

¶13. Sumrall petitioned the chancery court for a modification of the original divorce decree, asking for a reduction of the amount of monthly child support he is required to pay. Specifically Sumrall asked that the child support be modified because both children were enrolled full time at universities and lived away from their mother's home.

¶14. A final divorce decree may be modified only upon a showing of a

> substantial or material change in the circumstances of one or more of the interested parties: the father, the mother, and the child or children, arising subsequent to the entry of the decree to be modified.

*Lawrence v. Lawrence*, 574 So.2d 1376, 1380 (Miss. 1991)(quoting *Tedford v. Dempsey*, 437 So.2d 410, 417 (Miss. 1983)). Factors to be considered in determining whether a material change has taken place include:

> (1) increased needs caused by advanced age and maturity of the children (2) increase in expenses, and (3) inflation factor. Other factors include (4) the relative financial condition and earning capacity of the parties, (5) the health and special needs of the child, both physical and psychological, (6) the health and special medical needs of the parents, both physical and psychological, (7) the necessary living expenses of the father, (8) the estimated amount of income taxes the respective parties must pay on their incomes, (9) the free use of a residence, furnishings, and automobile and (10) such other facts and circumstances that bear on the support subject shown by the evidence. . . .

*Caldwell v. Caldwell*, 579 So.2d 543, 547 (Miss. 1991)(quoting *Adams v. Adams*, 467 So.2d 211, 215 (Miss. 1985)).

¶15. Paragraph IX in the original divorce decree entered in June, 1983, required Sumrall to pay $1,200 per month in child support:Husband agrees to pay Wife as child support the sum of One Thousand Two Hundred Dollars ($1,200.00) per month on the tenth (10th) day of each month commencing on July 10, 1983. The record shows that Sumrall has continued to pay the required child support to Munguia.

¶16. Sumrall argues that paragraph X in the original divorce decree provides a basis for a reduction in child support he should be required to pay:

> Husband agrees to provide the reasonable expenses for a college education for each of the children of the parties if the child demonstrates an aptitude and desire for a college education and properly applies himself or herself. Such expenses shall include but not be limited to tuition, books, room and board, a clothing allowance and all college-related incidental expenses. **It is expressly agreed and understood, however, that any amount Husband pays to Wife as child support shall be considered in the determination of the necessary and reasonable costs of such schooling.**

¶17. It is clear from the plain reading of Paragraph X that both parties intended that there would be a reduction in child support once the children began college. The chancellor noted that "both children are living away from home most of the year and [Sumrall] is providing for all of their necessary living expenses during that time." The chancellor held that this constituted a material change in circumstances. The chancellor then ordered Sumrall to pay child support to Munguia only during the months of May, June, July, August, December, and January.

¶18. Upon reviewing the factors that determine whether a modification is appropriate, this Court finds that the chancellor did not err in suspending child support during the six months of the year when the children were away in college. The child support payments are still very liberal.

¶19. Sumrall argues that the chancellor should have reduced his child support obligation to only three months every year: June, July, and August. Sumrall asserts that these are the only three months that the children actually live in their mother's home.

¶20. Munguia points out, however, that Heather actually spent a total of twenty-five weeks at Munguia's home the previous year. Universities typically end their fall semester in mid-December and do not begin the spring semester until mid-January. The spring semester ends during mid-May, with the fall semester

beginning mid to late August. One must also take into account Thanksgiving holidays, Easter holidays, and spring break.

¶21. One factor to be considered in modifying child support is the necessary living expenses of the father, as well as the financial condition of the father. Sumrall is currently married and has a small child. As noted by Sumrall, his income was essentially the same at the time of the original decree in 1983 as it was at the time of the modification in 1998. The chancellor noted that Sumrall's adjusted gross income of 1997 was approximately $90,000, with approximately one-half of that amount, $41,401.06, being paid to support Heather and Bradley.

¶22. Another factor to be considered is the earning capacity of the mother, as well as her health. Munguia holds a nursing degree, is in good health, and capable of working. Sumrall's current wife is a nurse and makes approximately $48,000 per year. Munguia, working as a nurse, could make similar wages.

¶23. Munguia argues that she is in dire financial straits. The record shows that Munguia lives in home valued at $535,000 with equity of approximately $270,000. She also has a secondary residence where she has equity of approximately $5,000. Munguia claims to have approximately $5,000 in jewelry and $15,000 in home furnishings. She also has an IRA account valued at $53,000. Munguia's total assets are valued at $1.2 million. However, Munguia testified that she had no plan to liquidate any of her assets to help these dire financial straits.

¶24. This Court has ruled that a father should not be required to maintain his children in a standard of living beyond his financial ability to provide. *Adams v. Adams*, 467 So.2d 211, 215 (Miss. 1985). That seems to be exactly what is occurring here. As noted earlier, Sumrall pays approximately one-half of his adjusted gross income in support of Heather and Bradley. The trial court recognized that Sumrall was living a modest lifestyle and that he should not be required to maintain Heather and Bradley in a lifestyle beyond his own.

¶25. Because Heather and Bradley attend school at least nine months of the year and in some instances attend summer school, we cannot hold that the chancellor erred in ordering child support payments for six months of the year. This issue is without merit.

### II. WHETHER THE TRIAL COURT ERRED IN FAILING TO GIVE SUMRALL A CREDIT FOR OVERPAYMENT OF CHILD SUPPORT RETROACTIVE TO BRADLEY'S ENROLLMENT IN COLLEGE.

¶26. Sumrall argues that the trial court erred when it failed to make the reduction in child support retroactive to the time Bradley entered college. Sumrall cites our unpublished decision in *Strub v. Strub*, No. 95-CA-01348-SCT (Miss. Feb. 13, 1997), as authority for his position that "[c]hancellors who sit in courts of equity have discretionary authority as to the effective date of both original orders and modifications." Not only is *Strub* inapplicable to this case, *Strub* is not precedent from this Court. *Strub v. Strub*, handed down by this Court on February 13, 1997, was not designated for publication and may not be cited pursuant to M.R.A.P. 35-A.

¶27. Sumrall also cites *Nichols v. Tedder,* 547 So.2d 766 (Miss. 1989), for the proposition that he be allowed credit for excess child support paid since Bradley entered college in August, 1997. In *Nichols*, a father was in arrears in paying his child support. Eventually his daughter became emancipated and his son moved into the father's home. The father filed a petition for modification of child support. The chancellor

ruled that the father no longer owed child support to the mother and gave the father credit against the arrearage for the child support paid during the time period between the daughter's emancipation and the son's relocation and the time the chancellor's order was entered. *Nichols*, 547 So.2d at 781. This Court stated that the father should be allowed to prove he should receive credit for payments made from the point in time where the changes occurred and that filing a petition to modify child support allows the father the opportunity. *Id.*

¶28. Based upon *Nichols*, the trial court erred in not allowing Sumrall a credit for the child support paid since Bradley entered college in August, 1997. This Court orders that the modification of child support be retroactive to August, 1997, giving Sumrall credit for child support paid in September, October, and November, 1997, as well as credit for child support paid in February, March and April, 1998.

### III. WHETHER THE TRIAL COURT ERRED IN FAILING TO RULE WHETHER THERE WOULD BE A REDUCTION IN CHILD SUPPORT WHEN HEATHER REACHED AGE 22, WHICH WOULD OCCUR FOUR MONTHS FROM THE TIME OF THE TRIAL COURT'S RULING.

¶29. The chancellor's order in this case was issued in June, 1998. Sumrall filed a motion to rehear in August, 1998, which was denied by the chancellor. In his motion to rehear, Sumrall asked the chancellor to rule on changes in the child support obligation that would be based on Heather reaching the age of 22.

¶30. The court had specifically refused to rule on such issue in the June, 1998, order. The court stated that:

> [t]he $1200.00 amount for child support will not automatically decrease upon Heather's 22nd birthday, but would only be modified upon a showing of a material change in circumstances other than those already presented to this Court.

¶31. This issue was not ripe for review by the trial court at the time. Heather was not 22 years of age. Case law in this state is clear in that a father does not get an automatic reduction in child support when one child reaches maturity. *Wilson v. Wilson*, 464 So.2d 496, 497-98 (Miss. 1985)(citing *Moore v. Moore*, 372 So.2d 270 (Miss. 1979).

¶32. While the chancellor was correct in noting that the child support will not automatically decrease upon Heather's 22nd birthday, a close look at the Settlement Agreement signed by both Sumrall and Munguia implies that Heather's twenty-second birthday would be grounds to seek modification:

> The duty of the Husband to pay child support for each child shall terminate upon the occurrence of any of the following events:
>
> . . .
>
> (b) The attainment of his or her 18th birthday or the emancipation as hereinafter defined EXCEPT in the event the child is regularly enrolled in a college or university at the time of his or her 18th birthday, his or her termination date shall be extended until graduation from that school, but **in no event shall the termination date extend beyond his or her 22nd birthday.**

While the chancellor did not err in refusing to address the effect that Heather's 22nd birthday would have on the child support before Heather actually turned 22, it is clear that the parties intended a modification of

child support upon Heather's 22nd birthday.

## CONCLUSION

¶33. The chancellor did not err in reducing Sumrall's child support obligations to six months per year. However, the chancellor's order reducing child support is made retroactive to the date Bradley entered college in August, 1997. Additionally, this Court finds no error in the chancellor's failure to address child support obligations once Heather reached age 22.

¶34. Accordingly, the judgment of the Lowndes County Chancery Court is hereby

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PRATHER, C.J., BANKS, P.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**