BRIDGES, P.J.,
for the Court.
¶ 1. Amanda J. Franks filed a complaint for divorce against Kenneth Scott Franks seeking a divorce on the grounds of habitual cruel and inhuman treatment and habitual drunkenness. Amanda also sought custody of the two minor children, child support and a division of the marital property accumulated during the marriage. In his answer Scott filed a cross-claim for divorce on the grounds of habitual cruel and inhuman treatment and adultery. Scott also sought custody of the two minor children, child support and a division of the marital property accumulated during the marriage. The chancellor granted Scott a divorce on the ground of adultery, and Amanda was awarded custody of the children subject to Scott’s visitation.
STATEMENT OF THE ISSUES
I. WAS IT ERROR FOR THE CHANCELLOR TO AWARD CUSTODY OF THE MINOR CHILDREN TO AMANDA FRANKS?
FACTS
¶ 2. Amanda and Scott began seeing each other whén she was seventeen and he was twenty-six. She became pregnant and they were married before she graduated high school. They lived in Alabama with the Franks or in a trailer until they built their home in Caledonia, Mississippi. Amanda worked to get her registered nurse’s degree and worked for two nursing homes during the marriage. Amanda also had long periods of unemployment during the marriage but when working she earned approximately $40,000 per year. Scott was a supervisor at Weyerhaeuser and earned approximately $28,000 per year. Due to the nature of their employment, both Scott and Amanda worked shift work.
¶ 3. Amanda admitted to a one night affair with a fellow student while she was earning her nursing degree. There was also proof that she had a flirtation with a co-worker during the marriage but there was no proof that it went further. Once the parties separated, Amanda was seen spending time with another man whom she has since married. Scott used this evidence to prove adultery which was the ground on which the chancellor ultimately granted the divorce. The chancellor determined that both Amanda and Scott provided insufficient evidence to prove habitual cruel and inhuman treatment and that Amanda lacked sufficient evidence to prove habitual drunkenness. The chancellor did find that the evidence proved habitual cruel and inhuman treatment when she evaluated custody under the Albright factors.
ANALYSIS
¶ 4. The standard of review in this domestic relations matter is limited by the substantial evidence/manifest error rule. Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990). “This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990). See also Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994); Faries v. Faries, 607 So.2d 1204, 1208 (Miss.1992). “On appeal [we are] required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong.” Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990). See also Dillon v. Dillon, 498 So.2d 328, 329 (Miss.1986). This is particularly true in the areas of divorce, alimony and child support. Tilley v. Tilley, 610 *137 So.2d 348, 351 (Miss.1992); Nichols v. Tedder, 547 So.2d 766, 781 (Miss.1989).
II. WAS IT ERROR FOR THE CHANCELLOR TO AWARD CUSTODY OF THE MINOR CHILDREN TO AMANDA FRANKS?
¶ 5. The chancellor properly considered the custody of the minor children in relation to the best interests of the children as applied under the Albright test. In the opinion of the court the chancellor considered each Albright factor individually and concluded which, if either parent, the factor favored. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Those factors and the chancellor’s conclusions are as follows:
1. Age and sex of the child-favored both parents.
2. Continuity of care prior to the separation — favored the mother.
3. Parenting skills — favored both parents.
4. Employment of the parent and responsibilities of that employment — favored the mother.
5. Physical and emotional fitness and age of the parents — favored the mother.
6. Emotional ties of parent and child— favored both parents.
7. Moral fitness of parent — favored neither parent.
8. Home, school and community record of the child — favored the mother.
9. The preference of the child at an age sufficient to express a preference by law — not applicable.
10. Stability of the home environment — favored neither parent.
11. Other factors relevant to the parent-child relationship — favored the mother.
As is evident, eight factors favored Amanda while only three favored Scott. In his appeal Scott offers evidence for every factor but numbers 8 and 9 that the chancellor’s decision was manifestly wrong. The chancellor’s basis and Scott’s grounds for reversal are discussed separately for each factor below.

Age and sex of the child

¶ 6. The chancellor offered no reason for finding that this factor favored both parents other than that Amanda and Scott are both parents of the children and that the children were six and two at the time of the divorce. Scott, in his appeal, claims that he took the children to get their various shots and considered himself their primary caretaker especially since he held their daughter so much. Scott believed since their son was becoming a “young lad” it was appropriate for the father to have custody.
¶ 7. The “tender age” presumption in favor of the mother has been modified over the years to a rebuttable presumption through the development of the Albright factors. Albright, 437 So.2d at 1005. Scott’s many grounds for reversal, not the least of which is his belief that he should be granted custody of the son because they are both male, are inconsistent with the evolution of custody standards under the Albright test.

Continuity of care prior to the separation

¶ 8. The chancellor found that this factor favored Amanda because she was a stay at home mother when their first born was young, she breast fed both children and even though both parents worked shifts she spent more time taking care of the children. Scott bases his belief that this factor should favor him on the fact that he presented photos of a messy house, their son enjoyed going fishing with him and he claims he was like “Mr. Mom” around the *138 house. However, the allegations of who was the better caretaker and homemaker is a version of “he said,” “she said” and divination of the truth is better left to the trial judge sitting as the finder of fact. The chancellor was in a better position to hear and interpret the facts given on this issue and Scott presented nothing which proved her result manifestly wrong.

Parenting skills

¶ 9. The chancellor simply stated that both parties were capable. Scott on appeal attempts to discredit Amanda’s parenting skills by stating she gave the children unhealthy dinners, sent the children to bed without baths or brushing their teeth and that the children often slept in their day clothes. Scott also claims Amanda is a non-cooperative co-parent in that she took the washer and dryer from his home, she took all the children’s belongings including their clothes and furniture and is keeping the majority of these things in storage. This required Scott to purchase all new things for the children including clothes because she refused to pack the children a bag.
¶ 10. However, Scott did nothing to bolster this Court’s opinion of his parenting skills other than his more cooperative nature. This factor alone is not enough to merit reversal of a chancellor’s decision.

Employment of the parent and responsibilities of that employment

¶ 11. In considering this factor the chancellor noted that both Amanda and Scott had sufficient family support in helping take care of the children when needed and that Amanda had arranged for daycare which both parents used. The factor favoring Amanda was that her shift work was not permanent and she was about to take a day shift position with her current employer and that Scott’s shifts were permanent. He was required to work twelve hour shifts of seven night shifts followed by seven whole days off, then seven day shifts followed by seven whole days off.
¶ 12. Amanda did in fact begin working the day shift with her current job and was still employed at it them at the time of this appeal. Scott believes that his fourteen full days off a month should favor him having custody of the children. For every other consideration of this factor both Amanda and Scott are equally matched. Both have willing and able parents to help out, both have daycare arrangements and both work shift work. The finding by the chancellor that a consistent routine each week for the children, which they would have with their mom, was preferable is not manifestly wrong.

Physical and emotional fitness and age of the parents

¶ 13. The chancellor noted that Amanda had suffered from depression prior to the separation but after hearing the testimony of her family, friends and work supervisor concluded that her current mental state was stable. In her ruling against Scott, the Chancellor found the husband’s numerous letters to Amanda regarding his use of alcohol, obsessive need to get revenge against his wife, his methods for wanting revenge and the abusive language contained in the letters were sufficient to grant custody to Amanda.
¶ 14. Scott claims that the determination of emotional health of the children should also include consideration of the emotional effect of the children and Amanda living with Amanda’s father. According to Scott, Amanda herself had called and asked Scott to intervene between their son and her father because she was not going to allow her father to “holler and scream” at him the way he did to her. Scott supports this claim by evidence that the children would cry and not want to leave their *139 father to stay with their mother. This additional evidence alone is not sufficient.

Emotional ties of parent and child

¶ 15. The chancellor found that both parents had love and affection for their children. Scott offers no new argument for this factor but just reiterates arguments from the previous factors.

Moral fitness of parent

¶ 16. The chancellor did not favor either parent on this issue, finding that Amanda had had an affair with a man earlier in the marriage, had a serious flirtation with another man, and her flirtation with a third man did become a sexual relationship once the parties were separated. The chancellor found that Scott had been unable to overcome Amanda’s affair. Scott suggested she arrange a “menage a trois” and that her own sister could be the third person. Scott admitted to viewing pornography and it was known that, while dating Amanda when she was seventeen, he would regularly give her and her under-aged cousin alcohol. For these reasons, the chancellor found that this factor favored neither parent.

Other factors relevant to the parent-child relationship

¶ 17. The fact that Scott placed all blame on Amanda without admitting to his own mistakes was why the chancellor determined this factor favored Amanda. Scott admitted to physically assaulting Amanda at least once during the marriage and using derogatory words against her in both letters and while speaking but claimed Amanda herself was at fault for his outbursts. The fact that Scott could not clean the house, watched pornography and wanted a “menage a trois” was all the fault of Amanda. Scott’s inability to take responsibility for his own actions raised questions about his judgment and parenting abilities to the chancellor.
¶ 18. Scott discussed the “moral fitness of parent” and the “other factors relevant to the parent-child relationship” factors together, which we will do here. Scott’s primary complaint regarding these issues is that the evidence presented by Amanda, to prove habitual cruel and inhuman treatment and habitual drunkenness, was insufficient to grant a divorce but was sufficient to use in custody matters. This allegation is baseless. The chancellor properly based her decision of custody on credible evidence presented during the scope of the trial.

Stability of the home environment

¶ 19. The chancellor decided that both parents had appropriate homes where the children could have separate bedrooms and that Amanda would soon move out of her mother’s house to her own home in Columbus. This factor did not favor either party.
¶ 20. Scott believes his home environment is better suited than Amanda’s home for several reasons. Firstly, Scott does not live with anyone else. Scott believes the number of family members visiting and living with Amanda’s parents is a negative factor. Secondly, Scott believes Amanda is focusing too much time and attention on her new relationship with Jason Fondren, who had since become her husband. Finally, Scott believes the court should not have based its finding on Amanda’s intention to move to another place but rather on the actual facts presented.
¶ 21. Scott presents nothing that was not properly presented before the trial judge and adequately considered there. The chancellor was within her rights to allow the intentions of the parties to be a factor.
¶ 22. After reviewing the findings of the chancellor and the complaints of error by Scott for each factor, we find that none of *140 them rise to the level sufficient for reversal as none prove the chancellor was manifestly wrong in her conclusions of fact.
¶ 23. THE JUDGMENT OF THE LOWNDES COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., SOUTHWICK, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.