990 So.2d 783 (2008)
Donna M. SULLIVAN, Appellant,
v.
Stephen D. SULLIVAN, Appellee.
No. 2007-CA-00771-COA.
Court of Appeals of Mississippi.
September 9, 2008.
*784 Melissa Lee Day Gardner, Brandon, Robert Lofton Gray, Flowood, attorneys for appellant.
Anselm J. McLaurin, Brandon, Brandi Lindsay Brown, attorneys for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. On April 17, 2007, the Chancery Court of Rankin County entered a final judgment of divorce granting Donna M. Sullivan and Stephen D. Sullivan a divorce on the ground of irreconcilable differences. The chancellor awarded primary physical custody of the parties' minor children to Stephen. The chancellor also equitably divided the parties' marital property. Aggrieved by the distribution of property, Donna filed a motion to reconsider, which the chancellor denied. She currently appeals from that order. Donna argues that the chancellor misapplied the Ferguson factors in dividing the parties' marital property.
¶ 2. Finding no error with the chancellor's equitable distribution of the marital property, we affirm.

FACTS
¶ 3. Donna and Stephen were married in Rankin County, Mississippi on June 4, 1976. The couple's marital home was in Rankin County, and they remained in Rankin County for the entirety of their marriage. At the time of the trial, Donna and Stephen had two minor children who were fifteen and sixteen years old, and they had a third child who was emancipated.
¶ 4. In February 2004, Donna met a man named Brandon Roberts at a bar in Jackson, Mississippi. Over the course of the next few months, the two of them spent time together and eventually developed a sexual relationship. In October 2004, despite Stephen's demands that she stay home instead of going out with Roberts, Donna left the marital home and did not return. According to Stephen, for two months after Donna left the marital home, he attempted to resolve the issue and tried to convince her to come home. Following the separation, Donna began living with Roberts, and they later moved into an apartment together. While Donna was living with Roberts, she continued to have access to the marital accounts, and Stephen approved of her using money from those accounts. Donna and Roberts remained living together at the time of the trial.
*785 ¶ 5. Stephen admitted that a few months after Donna moved out, he entered into a relationship with Penny Hopkins, who spent some nights with him in the marital home. In June 2005, Stephen began a relationship with Sharlette Wilson, whom he was dating at the time of the trial, and whom he said that he planned to marry.
¶ 6. In September 2005, Stephen filed for divorce based on uncondoned adultery and desertion or, in the alternative, irreconcilable differences. Donna answered and asserted her own grounds for divorce. In June 2006, the chancellor entered a temporary support order. The order provided that Stephen would have custody of the children, and Donna would get visitation. Donna was to be responsible for 25% of the children's medical expenses, and she was to pay Stephen $200 per month for child support. Stephen was ordered to pay Donna $600 per month as alimony. Stephen was also ordered to pay all past due expenses on the marital home; Donna was awarded possession of the marital home.
¶ 7. A divorce trial was set for February 28, 2007, but the parties withdrew their fault grounds for divorce and agreed to a divorce on the ground of irreconcilable differences. Trial proceeded on the unresolved issues of child custody, child support, visitation, division of real and personal property, debt responsibility, alimony, and attorney's fees. Following the trial, the chancellor rendered a bench opinion, and on March 12, 2007, the chancellor entered a final judgment of divorce. The judgment ordered the parties to share joint legal custody, with Stephen to have primary physical custody of the children. Based on Donna's cohabitation with Roberts and their mutual support of each other, the chancellor denied Donna's request for alimony. The judgment also divided the parties' marital property, the division of which is discussed in the analysis of the issue.
¶ 8. Following the judgment, Donna filed a motion for reconsideration, which the chancellor denied. She then timely filed the present appeal.

STANDARD OF REVIEW
¶ 9. We grant the chancellor much discretion in our review of a domestic relations case. Steiner v. Steiner, 788 So.2d 771, 777(¶ 18) (Miss.2001). Our scope of review in such a case is limited by the substantial evidence/manifest error rule. Mizell v. Mizell, 708 So.2d 55, 59(¶ 12) (Miss.1998) (citing Stevison v. Woods, 560 So.2d 176, 180 (Miss.1990)). We will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at (¶ 13).

ANALYSIS OF THE ISSUE
¶ 10. Donna attempts to argue that the issue she presents to this Court is an issue of law; however, she presents to us no such issue of law. She merely takes issue with the chancellor's findings concerning the Ferguson factors, and she argues that those findings resulted in an award of an insufficient amount of the marital assets. More specifically, she argues that the chancellor put too much emphasis on her admitted adultery with Roberts when Stephen also engaged in extramarital relationships. Donna does not take issue with the chancellor's decisions regarding child custody, child support, or alimony.
¶ 11. The only support that Donna cites for her argument is Henderson v. Henderson, 757 So.2d 285 (Miss.2000), which she argues stands for the proposition that an equal distribution of property may be proper notwithstanding the fact that one spouse was at fault. Upon reviewing *786 the Henderson opinion, we see no mention of marital fault other than in the discussion of whether the chancellor erred in denying the wife's request for alimony. Id. at 294(¶ 43). The supreme court noted that the chancellor found that the husband admitted to an adulterous relationship, but it occurred after the separation, and his relationships were not the cause of the separation. Id. Nevertheless, while an equal distribution of marital property may be proper even if one party is at fault, that determination, of course, depends on a proper analysis of the Ferguson factors.
¶ 12. When equitably distributing marital property, a chancellor should consider the well-known factors set forth in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss. 1994). Those factors are the following:
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and the emotional value of the assets subject to distribution.
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Id.
¶ 13. The chancellor determined that the marital assets consisted of the following property: (1) the marital home with a value of $60,000; (2) the lot at Eagle Lake with a value of $10,000; (3) two cemetery plots with a combined value of $2,600; (4) various U.S. savings bonds with a total value of $3,300; (5) a Pontiac Bonneville with a value of $4,000; (6) a Ford Expedition with a value of $4,000; (7) a life insurance policy with a cash surrender value of $4,279; (8) the Fen-Phen settlement with a value of $5,500; and (9) an individual retirement account (IRA) with a value of $206,647.14 at the time of the parties' separation. There was testimony that the IRA had increased in value to approximately $320,000-330,000 at the time of trial; however, the chancellor determined that the IRA's increase in value during the time since the separation was due mostly to passive market growth. Furthermore, *787 the chancellor found that Donna's adultery and subsequent decision to leave the marital home weighed heavily in his decision to value the IRA at the date of the separation. The chancellor also found that the home in Florence, Mississippi that Stephen purchased was separate property because he had purchased it after the entry of the temporary support order. See Godwin v. Godwin, 758 So.2d 384, 386(¶ 7) (Miss. 1999).
¶ 14. With regard to the Ferguson factors, the chancellor found that notwithstanding the fact that Stephen was primarily responsible for accumulating most of the property, the contributions to the accumulation of wealth were equal in light of Donna's role as a homemaker. Despite Donna's complaints regarding an $8,100 recovery from a lawsuit, there was no evidence that either party dissipated any of the assets. Aside from the monetary valuations of the property, Donna had an emotional attachment to the marital home. There was no evidence that any of the property was brought into the marriage or acquired by inheritance or inter vivos gift. As for tax consequences, the chancellor ordered Stephen to bring the taxes up to date on the marital home. The chancellor further stated that the award would do away with any need for alimony. While Donna's earnings were nominal, the chancellor noted that twenty-seven days previously, Donna stated in a medical record that she worked as an EMT. The chancellor strongly encouraged Donna to attempt to return to work in such capacity. Furthermore, Donna and Roberts were living together, and Roberts was supporting her financially. Lastly, the chancellor found that Donna's "open, shameless, continued relationship with Mr. Roberts had a tremendous impact on the harmony and stability of the marriage."
¶ 15. After analyzing the Ferguson factors, we find that the chancellor awarded Donna all of the marital assets aside from the cash surrender value of the life insurance policy, one-half of the value of the various U.S. savings bonds, and $186,647.14 of the assessed value of Stephen's IRA. Additionally, the chancellor ordered Stephen to pay for thirty-six months of health insurance for Donna; $7,294.78 of her attorney's fees; $532 in past due homeowners' association fees; $253 in past due insurance premiums; $30 in past due garbage fees; and all past due taxes, interest, and penalties on the marital home. The chancellor gave him credit for a $250 utility deposit. Donna also received the $500 that was held in her attorney's trust account. The final judgment further provided for the distribution of various specific pieces of property that the parties had requested.
¶ 16. It is well established that an equitable distribution of property does not have to be an equal distribution of property. Hensarling v. Hensarling, 824 So.2d 583, 590(¶ 20) (Miss.2002). "[T]here is no automatic right to an equal division of jointly-accumulated property, but rather, the division is left to the discretion of the court...." Parsons v. Parsons, 741 So.2d 302, 306(¶ 23) (Miss.Ct.App.1999) (quoting Ferguson, 639 So.2d at 927). In this case, the chancellor conducted a thorough analysis of the Ferguson factors and concluded that an equal award of the marital property was not warranted.
¶ 17. Donna briefly takes issue with the fact that her award of the marital property was, for the most part, not liquid. However, looking at Stephen's award, this is even more applicable because the overwhelming majority of his award was the value of his IRA. Besides the remainder of his IRA, he received the Ford Expedition, one-half of the U.S. savings bonds, and the cash surrender *788 value of the life insurance policy. The very nature of the marital estate was such that most of the assets were not liquid. In this respect, we see no error with Donna's award.
¶ 18. Donna's major complaint is that the chancellor placed too much emphasis on her adultery with Roberts when Stephen engaged in three extramarital affairs. The record reflects that the first of these relationships happened very early in Donna and Stephen's marriage. Stephen testified that Donna too had an affair early in their marriage, but he and Donna overcame their early problems. As for the two other women, Stephen testified that they came a few months after Donna had left him and moved in with Roberts. We find no evidence in the record to the contrary. Despite Donna's complaints, Stephen's extramarital affairs did not burden and ultimately destroy the marriage. What did bring about the end of the marriage was her open affair with Roberts and her decision to move out of the marital home and to move in with Roberts.
¶ 19. The chancellor was correct to consider Donna's affair. Marital misconduct is a proper factor for a chancellor to consider when equitably distributing marital assets "when the misconduct places a burden on the stability and harmony of the marital and family relationship." See Ory v. Ory, 936 So.2d 405, 413(¶ 23) (Miss.Ct. App.2006) (citing Singley v. Singley, 846 So.2d 1004, 1007(¶ 8) (Miss.2002)). The record reflects that Donna's ongoing affair with Roberts placed a tremendous burden on the marriage and ultimately resulted in her leaving Stephen. Accordingly, we see no error with the chancellor's decision to place great emphasis on what he deemed her "open, shameless, continued relationship" with Roberts. We see no merit to Donna's argument on appeal that "[f]ault for the disintegration of [the] marriage should be shared equally...."
¶ 20. Ultimately, Donna received approximately one-third of the marital estate and various other pieces of property that she sought. She also received health insurance for three years and one-half of her attorney's fees. She did not receive any alimony, but she admitted that she and Roberts lived together and provided for each other financially. After reviewing the record, we find that the final judgment was supported by an appropriate review of the Ferguson factors. We find that the chancellor's application of the Ferguson factors and subsequent equitable division of the marital property was supported by substantial evidence and was not the result of manifest error. Therefore, we affirm the final judgment of divorce.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.