MAXWELL, J.,
for the Court:
¶ 1. Equitable distribution of marital property does not mean equal distribution of marital property. In this case, the chancellor distributed the marital property and debt unequally. Linda Carter was awarded all the marital property — a piece of land and a manufactured home. But William Carter was ordered to pay seventy percent of the marital debt. Considering William’s significant separate estate and income compared to Linda’s non-existent separate estate and small income, this overall distribution was not inherently inequitable. But it was based on an erroneous fact-finding.
¶2. The chancellor actually divided the debt equally but then “credited” Linda $11,000 for separate property that she sold, investing the proceeds in the marital home. Because the evidence shows the fair market value of her separate property was $4,000 — the actual sale price of her manufactured home — we find the $11,000 credit to be .error. And because an error in one financial award impacts the entire distribution, we reverse and remand this case to the chancellor to reconsider the equitable distribution of the assets and debt and, if necessary, the need for alimony.
Background
¶ 3. Before entering what was for both Linda and William a second marriage, they signed a pre-nuptial agreement. Under this agreement, all separate property owned before the marriage remained separate, and all future income and separately acquired property likewise remained separate. Thirteen years later, when the Clairborne County Chancery Court granted Linda a divorce based on William’s habitual cruel and inhuman treatment,[1] *1112 William had a monthly disability income of approximately $2,200 and separate assets including a $108,000 retirement account. Linda had an $800 monthly income and no separate assets. Previously, Linda had separately owned a piece of real property (a residential lot) and a manufactured home. But she converted the lot to marital property when she added William to the deed to obtain financing for a new manufactured home, which was placed on the lot. And she sold her old manufactured home for $4,000 to make room for this new marital home. This marital home, valued at $43,000 but encumbered with $49,000 in debt, and the lot, valued at $9,500, were the only marital assets.
¶ 4. The chancellor awarded Linda sole physical custody of their one child, D’Erra. Because D’Erra already received approximately $1,200 a month based on William’s disability, the chancellor deviated from the statutory child-support guidelines and awarded no additional child support.
¶ 5. The chancellor also awarded Linda the marital home and the lot, which was adjacent to other property owned by Linda’s family. The chancellor found this distribution eliminated the need to award alimony. The chancellor then divided the $49,000 debt owed on the marital home equally — assigning $24,500 to each party. But the chancellor credited Linda $15,-000 — what Linda had testified was the value of her home — instead of $4,000, the actual amount for which she sold the home. So in the original division of the debt, William was ordered to pay $89,500 of the mortgage and Linda the remaining $9,500.
¶ 6. William moved to have the chancellor reconsider the $15,000 credit. In his amended divorce judgment, the chancellor acknowledged he had made an error. The chancellor reiterated that he had divided the $49,000 debt equally “before deducting any applicable credits.” But when he had calculated Linda’s credit, he had failed to consider that Linda had received $4,000 when she sold her home. The chancellor found the proper credit was $11,000, not $15,000. He amended the debt distribution — ordering William to pay $34,500 and Linda $13,500. Specially, the chancellor ordered William to make 110 mortgage payments of $320 (plus a final payment of $190) before Linda took over responsibility for the mortgage.
¶ 7. William appeals the amended judgment, challenging the property distribution.
Discussion
¶ 8. For almost two decades, Mississippi chancellors have had a clear directive when dealing with property in divorce. First, the chancellor must determine what assets are marital and what assets are nonmarital. Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994). Then the chancellor must equitably divide the marital property, “employing the Ferguson factors as guidelines, in light of each parties’ nonmarital property.” Id. (citing Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994)). If there are sufficient assets to provide for both parties, then there is no more to be done. But if there is a deficit for one party, the chancellor should consider alimony. Id.
¶ 9. Our task is to review the chancellor’s findings on the Ferguson factors— “we do not conduct a Ferguson analysis anew.” Vaughn v. Vaughn, 56 So.3d 1283, 1289 (¶ 21) (Miss.Ct. App.2011) (citing Goellner v. Goellner, 11 So.3d 1251, 1264 (¶ 45) (Miss.Ct.App.2009)). We employ the familiar manifest-error standard of review. Id. at 1288 (¶ 17). A chancellor’s factual findings will not be disturbed unless “manifestly wrong, clearly erroneous, or the chancellor applied an improper legal standard.” Id. (citing Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009)).
*1113 ¶ 10. William argues the chancellor must have applied the wrong legal standard because a proper application of Ferguson could not have yielded the inequitable result of William’s receiving no marital property but a majority of the marital debt. He also challenges the basis for the $11,000 credit. While we find the chancellor correctly applied Ferguson to award Linda the marital property, we find clear error in his application of an $11,000 credit to the equally divided marital debt.

I. The Marital Property

¶ 11. As the Mississippi Supreme Court has stressed, “an equitable division of property does not necessarily mean an equal division of property.” Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994). William first argues it was inequitable under Ferguson for him not to receive any share of the marital property. But Mississippi is not a community-property state that requires a fifty-fifty split of all assets. Id. at 864 (citing Dillon v. Dillon, 498 So.2d 328, 330 (Miss.1986); Rives v. Rives, 416 So.2d 653, 657 (Miss.1982)). Instead, property division “is committed to the discretion and conscience of the Court, having in mind all of the equities and other relevant facts and circumstances.” Id. (quoting Brown v. Brown, 574 So.2d 688, 691 (Miss.1990)).
¶ 12. As long as Ferguson is properly applied, equitable divisions may indeed be lopsided. And “[w]hen the facts and circumstances warrant an equitable division of the [marital] estate of one-half or greater and such a division complies with the Ferguson principles, then we are duty bound to let such a distribution stand.” Phillips v. Phillips, 904 So.2d 999, 1003 (¶ 13) (Miss.2004). This court performed that duty in Seymour v. Seymour, 960 So.2d 513, 519 (¶¶ 13-15) (Miss.Ct.App.2006). In that case, we affirmed the chancellor’s award of ninety-seven percent of the marital property, including the marital home, to the wife and order that the husband pay the outstanding debt on the marital home, because the facts and circumstances — including the husband’s much larger income and separate assets— supported such a division. Id.
¶ 13. Urider these facts, the chancellor’s award of the home and real property to Linda appears warranted and based on a proper application of Ferguson principles. The chancellor determined, based on the pre-nuptial agreement, the home and the lot were the only marital assets. He then considered each Ferguson factor:
(1) contribution to the accumulation of property,
(2) dissipation of assets,
(3) the market or emotional value of assets subject to distribution,
(4) the value of assets not subject to distribution,
(5) the tax and economic consequences of the distribution,
(6) the extent to which property division may eliminate the need for alimony,
(7) the financial security needs of the parties, and
(8) any other factor that in equity should be considered.
Ferguson, 639 So.2d at 928-29.[2] The chancellor found Linda had been the sole contributor to the piece of real property, and she was emotionally attached to the property because it is surrounded by family-owned land. Although William paid the *1114 mortgage on the home, Linda had paid all the household expenses and took care of their child. The chancellor found Linda did not have the financial means to obtain a new place to live, while William did. The house has no equity in it. So essentially the chancellor was awarding her the use of the house as a place for her and D’Erra to live. And awarding Linda the home also eliminated the need to award her alimony.
¶ 14. We find no abuse of discretion in this Ferguson analysis simply because it resulted in Linda receiving the two marital assets.

II. The Marital Debt

¶ 15. Debts acquired during the course of the marriage are also subject to equitable distribution. McLaurin v. McLaurin, 853 So.2d 1279, 1285-86 (¶ 24) (Miss.Ct.App.2008). Here, the amended divorce judgment resulted in William being assigned over seventy percent of the marital debt. Contrary to William’s assertion, we find nothing inherently inequitable about this division—particularly in light of William’s much larger separate estate and financial ability and the fact Linda was awarded no alimony. See Seymour, 960 So.2d at 519 (¶¶ 13-15) (affirming the chancellor’s order that the husband pay the remainder of the mortgage on the marital home, which was awarded to the wife, because the husband’s separate estate and income were much larger); Humphries v. Humphries, 904 So.2d 192, 198 (¶ 24) (Miss.Ct.App.2005) (affirming the chancellor’s award of the majority of the marital debt to one spouse because “the evidence suggested] that the chancellor acted upon his duty to divide the marital property and marital debt fairly, albeit unequally”).
¶ 16. But we do find clear error in how the chancellor reached this result. In the amended divorce judgment, the chancellor stated that he was dividing the debt equally, assigning $24,500 in debt to both William and Linda. The resulting seventy/thirty percent split was based on the $11,000 credit given to Linda. While the seventy/thirty percent division is not itself grounds for reversal, we find no substantial evidence to support the $11,000 figure.
¶ 17. “Property division should be based upon a determination of fair market value of the assets[.]” Ferguson, 639 So.2d at 929. And the supreme court has defined “fair market value” as the “price at which property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of the relevant facts.” Singley v. Singley, 846 So.2d 1004, 1011 (¶ 18) (Miss.2002). While Linda testified her home was worth $15,000, she also testified she willingly sold it to her neighbor for $4,000. So if Linda is to be credited for separate property that she converted into marital property, the amount of her credit should be $4,000—the fair market value of the home and the amount of money she invested in the marital home—and not $11,000—the difference between the fair market value and the amount she claimed her home was worth.
¶ 18. The change in one financial award or obligation changes the “entire field” of the financial settlement in a divorce judgment. Rhodes v. Rhodes, 52 So.3d 430, 450 (¶ 82) (Miss.Ct.App.2011) (quoting Lauro v. Lauro, 847 So.2d 843, 849 (¶ 13) (Miss.2003)). Because we find the $11,000 credit to be clearly erroneous, we reverse and remand the entire equitable distribution for the chancellor to reconsider. See id. (holding an error in classification of marital asset required remanding *1115 all financial aspects of divorce judgment, including alimony). On remand, the chancellor is not bound to divide the debt equally and apply a $4,000 credit. Rather, the chancellor must again apply the Ferguson factors, in light of William’s and Linda’s nonmarital property, to divide the property and debt equitably. See Lauro, 847 So.2d at 848 (¶ 13) (quoting Johnson, 650 So.2d at 1287)). He should also consider alimony, should there be a deficit. See id.
¶ 19. THE JUDGMENT OF THE CLAIBORNE COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ„ CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. William has been diagnosed with a "mental nervous disorder” but refuses to take medication. The chancellor awarded Linda a grounds-based divorce because of William’s verbal and emotional abuse of her and his unwillingness to engage with his family.

. The chancellor also properly considered William’s marital fault, which was the cause of the divorce. See Singley v. Singley, 846 So.2d 1004, 1008 (¶ 10) (Miss.2002) (holding marital fault is "relevant to the chancellor’s consideration of equitable distribution [when] it impact[s] upon the harmony and stability of the marriage”).