MAXWELL, J.,
for the Court:
¶ 1. John Jones[1] challenges the fairness of the financial awards to his wife, Jane Jones, tied to their fault-based divorce. John’s primary dissatisfaction concerns the chancellor’s division of the marital estate. As John sees it, the chancellor should have placed more weight on the fact the marital estate was amassed almost solely through his family’s generosity and less emphasis on his actions that undoubtedly caused the end of the almost thirty-year marriage. But we find nothing unbalanced about the chancellor’s Ferguson analysis.[2] The chancellor found John’s direct economic contributions, through his family, were equal to the indirect economic contributions by Jane, who also made significant contributions to the harmony and stability of them marriage and family. Because John was unequaled in his contribution to *859 the destruction of that harmony and stability, the chancellor found equity dictated Jane receive a larger portion of the marital estate. Finding no abuse of discretion, we affirm the chancellor’s award of 62.5% of the marital estate to Jane.
¶ 2. But we reverse the award of “nominal” permanent alimony. Having found the property division was sufficient, the chancellor abused his discretion by nonetheless awarding alimony based on Jane’s possible future needs and John’s possible future income. Because there was no present basis for the award, we reverse and render the alimony award of $10 per month.
¶ 3. We also reverse the award of $18,250 for attorney’s fees and expert-witness expenses. While this is an issue “largely entrusted to the sound discretion of the trial court,”[3] attorney’s fees should not be awarded unless the requesting party can establish an inability to pay. While Jane presented evidence that pre-divorce her expenses exceeded her income, the chancellor failed to consider Jane’s ability after the divorce and in light of the property division. Because we find the chancellor’s equitable division left Jane in a position to pay her attorney’s fees and expeYt-witness expenses, we reverse and render the award of $18,250.
Background Facts
¶ 4. The record in this case was sealed by the chancellor, due to outrageous and unsubstantiated claims John made during the contested phase of the divorce. Since John does not appeal the chancellor’s grant to Jane of a divorce based on John’s habitual cruel and inhuman treatment, we see no need to delve into the lurid factual allegations that led to John and Jane’s divorce.
¶ 5. John does, however, argue the chancellor improperly considered his marital fault when equitably dividing the marital estate. This estate was amassed during John and Jane’s twenty-eight-year -marriage, during which they enjoyed a financially comfortable lifestyle. In addition to various family businesses that either employed John or provided income, John also earned income as an attorney. Jane worked primarily in the home, taking care of the household and children.
¶ 6. After determining what assets belonged to the marital estate and their value, and taking into consideration the amount of debt owed on the assets, the chancellor awarded Jane 62.5% of the estate and John 37.5%. The chancellor applied the factors from Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994), to arrive at the division. Specifically, he found Jane’s contributions as homemaker were equivalent to John’s. The chancellor found neither dissipated assets. He also recognized John’s emotional ties to certain assets, especially real property in Scott County, stock in a local bank, and an ownership interest in a car dealership founded by John’s father and another family business.
¶ 7. But the chancellor also recognized John as the sole contributor to the end of the long marriage. Consequently, the chancellor found equity dictated Jane receive a larger portion of the marital assets, versus a fifty-fifty split. Specifically, the chancellor awarded Jane: $1,014 in cash, her personal vehicle, her retirement accounts, both her and John’s shares in the bank, six of John’s individual retirement accounts, and a condominium in Oxford, Mississippi, free and clear of all liens.
¶ 8. Because the total value of these assets were less than 62.5% of the marital *860 estate, the chancellor also ordered John to pay Jane the remaining $187,226.77 of her property award in annual installments of $25,000. The chancellor explained the purpose of this cash award was to provide Jane her equitable share of the marital estate, while allowing John to keep the remaining marital assets, which included John’s family land and businesses. However, the chancellor granted Jane an equitable lien on these properties as security for the $187,226.77 award.
¶ 9. Specifically, the chancellor awarded John the ownership interest in the car dealership, the ownership interest in the other family business, the real property in Scott County, Mississippi, and a collection of Civil War memorabilia. The chancellor also ordered that John be solely responsible for his more than $466,715 in various debts, and Jane be solely responsible for her more than $14,886.67 in various debts.
¶ 10. The chancellor found the property division, which included the $25,000 annual payments, eliminated the need for alimony. But because the chancellor found Jane met the criteria for permanent — or periodic— alimony, he awarded her a “nominal” $10 per month in permanent alimony, in the event Jane’s need for alimony ever increased and John’s income and ability to pay also increased.
¶ 11. Finally, the chancellor found Jane did not have the ability to pay her attorney’s fees. The chancellor ordered John pay $14,000 towards her attorney’s fees, plus $4,250 toward the expert witness’s fee, for a total of $18,250.
¶ 12. John appeals the financial awards to Jane — (1) the 62.5%/37.5% split of the marital property in favor of Jane; (2) the award of “nominal” permanent alimony of $10 per month; and (3) the award of $18,250 in attorney’s and expert-witness fees.
Discussion

I. Equitable Distribution of Marital Property

¶ 13. In reviewing the chancellor’s equitable division, we employ the familiar manifest-error standard of review. See Vaughn v. Vaughn, 56 So.3d 1283, 1288 (¶ 17) (Miss.Ct.App.2011). “We will not disturb a chancellor’s factual findings unless the chancellor’s decision was manifestly wrong [or] clearly erroneous, or the chancellor applied an improper legal standard.” Id. (citing Wallace v. Wallace, 12 So.3d 572, 575 (¶ 12) (Miss.Ct.App.2009)).
¶ 14. Here, in ordering the equitable distribution of the Joneses’ marital property, the chancellor applied the correct legal standard, following the directive to “(1) classify the parties’ assets as marital or separate property, (2) determine the value of those assets, and (3) divide the marital estate equitably based upon the factors set forth in Ferguson.” Smith v. Smith, 90 So.3d 1259, 1267 (¶ 31) (Miss.Ct.App.2011).
A. Categorization of Assets
¶ 15. First, the chancellor determined what property was marital. The chancellor found, because John had commingled the assets given to him by his father, these assets were marital through the family-use doctrine. See Stewart v. Stewart, 864 So.2d 934, 937 (¶ 12) (Miss.2003) (“Separate property that has been ‘commingled with the joint marital estate’ also becomes marital property subject to equitable distribution.” (quoting Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994))); see also Rhodes v. Rhodes, 52 So.3d 430, 438 (¶ 26) (Miss.Ct.App.2011) (discussing family-use doctrine). John does not appeal the classification of these assets as marital. Instead, he argues the chancellor failed to recognize the source of these marital as *861 sets when applying the Ferguson factors— an argument we address under our review of the chancellor’s Ferguson analysis.
B. Valuation of Assets
¶ 16. The chancellor next determined the value of the marital estate. Factoring in the debts owed on marital assets, the chancellor valued the estate at $1,117,049.50. While John balks at the value assigned to several assets, John has failed to show how the record supports these valuations were manifestly wrong or clearly erroneous.
¶ 17. For example, John argues the chancellor erred by relying on Jane’s financial expert when assigning the value to one of the family businesses, an asset ultimately awarded to him. John asserts the expert’s valuation of the business was based on hearsay. But Mississippi Rule of Civil Procedure 703 permits “an expert’s opinion [to] be based off of inadmissible evidence, such as hearsay, if it is of a type reasonably relied upon by experts in the particular field.” Martin v. Miss. Transp. Comm’n, 953 So.2d 1163, 1167 (¶ 16) (Miss.Ct.App.2007). Here, the chancellor permitted the expert to testify about this asset after finding the expert used sound methodology and reasonably relied on the evidence available to reach his valuation. As John has not shown why the valuation was unreliable under Mississippi Rule of Civil Procedure 702 or even suggested what the proper value of the business would have been had correct methods been applied, we find no abuse of discretion in the chancellor’s reliance on the expert’s testimony.
¶ 18. John also asserts the chancellor erred by relying on John’s Rule 8.05 financial-declaration form to assign values to certain assets because John’s responses were merely “guesstimates.” See UCCR 8.05 (requiring in all domestic matters involving property disputes that each party provide a detailed written disclosure of his or her financial status). But as a licensed attorney, John knew, or should have known, that the chancellor could — and would — rely on the financial information he submitted to the court. “A Rule 8.05 statement is a mandatory filing with the chancery court that provides that court with accurate financial information to assist in its equitable distribution of the divorcing parties’ assets.” Trim v. Trim, 33 So.3d 471, 478 (¶¶ 16-17) (Miss.2010) (emphasis added) (holding that “failure to submit a Rule 8.05 statement without just cause constitutes contempt of court” and “a party’s intentional filing of a substantially false Rule 8.05 financial statement constitutes a fraud on the court”). Consequently, a chancellor’s valuation of marital assets “may be accomplished by adopting the values cited in the parties’ 8.05 financial disclosures[.]” Jenkins v. Jenkins, 67 So.3d 5, 13 (¶ 19) (Miss.Ct.App.2011) (quoting Horn v. Horn, 909 So.2d 1151, 1165 (¶ 49) (Miss.Ct.App.2005). So to the extent the chancellor relied on values assigned on the Rule 8.05 form, we find it was within the chancellor’s discretion to do so. See Mauldin v. Mauldin, 107 So.3d 176, 179 (¶¶ 14-15) (Miss.Ct.App.2013) (finding no error in the chancellor’s reliance on values assigned in spouses’ Rule 8.05 forms).
¶ 19. And to the extent the chancellor viewed other information on John’s Rule 8.05 with skepticism, we find such credibility findings were also within the chancellor’s discretion as fact-finder. See Holley v. Holley, 969 So.2d 842, 844 (¶ 8) (Miss.2007) (“[T]he chancellor is the trier of fact and determines the weight and credibility of the evidence.”). The record reflects John assigned drastically higher valuations for Jones-family assets prior to Jane’s filing for divorce in comparison to when John *862 realized these assets would become part of the marital estate to be divided.
¶ 20. Thus, it appears John wants to have it both ways — arguing his valuations were correct and should have been applied when they benefitted him but merely “guesstimates” when they did not. As it was for the chancellor to weigh the credibility of John’s information, we will not disturb the values the chancellor assigned — especially when John fails to show why they were incorrect.
C. Division of Marital Assets
¶ 21. Finally, the chancellor went through the Ferguson factors to determine how the marital estate should be equitably divided. These eight factors are:
1. Substantial contribution to the accumulation of the property[;]
[[Image here]]
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise[;]
8. The market value and the emotional value of the assets subject to distribution!!;]
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos' gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 22. John challenges the chancellor’s findings on almost every factor.[4] But the focus of his argument hones in on the contribution factor.

1. Contribution

¶ 23. In considering each spouse’s contribution, Ferguson directs chancellors to weigh not only the “[d]ireet or indirect economic contribution to the acquisition of the property” but also the “[c]ontribution to the stability and harmony of the marital and family relationships.”[5] Id. The chancellor found both spouses’ economic contributions were equal. But he found John’s destruction of the twenty-eight-year marital relationship weighed heavily against John. John challenges both aspects of the chancellor’s contribution findings.
¶ 24. Regarding economic contribution, John argues this factor instead favors him because it was his family’s generosity — through gifts and job opportunities — that led to the accumulation of the marital assets. Though acknowledging John’s contributions, the ehaneel- *863 lor found applicable the presumption that “the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value.” Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994); see also Owen v. Owen, 798 So.2d 394, 399 (¶ 15) (Miss.2001) (holding “spouses are not prohibited from receiving a portion of marital assets acquired solely by the other spouse’s financial contributions if that non-cash contributing spouse has made alternative contributions to the marriage”). Because Jane significantly contributed by taking cai'e of the marital home, ensuring John’s domestic needs were met, and almost single-hand-edly raising their children, the chancellor determined John’s and Jane’s contributions were equal. We find no abuse of discretion in this finding.
¶ 25. Regarding contribution to the stability and harmony of the marriage and family, John argues the chancellor unfairly penalized him for his actions that led to the Jane being granted a fault-based divorce.
¶ 26. Marital fault is “relevant to the chancellor’s consideration of equitable distribution [when] it impact[s] upon the harmony and stability of the marriage.” See Singley v. Singley, 846 So.2d 1004, 1008 (¶ 10) (Miss.2002). In Singley, the Mississippi Supreme Court held it was error to divide the marital assets evenly, because such a division overlooked the wife’s actions that “significantly impacted and burdened the stability and harmony of the marriage.” Id. at 1009 (¶ 13); see also Watson v. Watson, 882 So.2d 95, 108-09 (¶ 68) (Miss.2004) (holding that the chancellor, by dividing assets equally, “obviously ignored conduct” that had “impacted and burdened the stability and harmony of the marriage” (quoting Singley, 846 So.2d at 1009 (¶ 13))). Similarly, in Sullivan v. Sullivan, 990 So.2d 783, 788 (¶ 18) (Miss.Ct.App.2008), this court rejected the argument that the chancellor “placed too much emphasis” on marital fault. Because the wife’s conduct “placed a tremendous burden on the marriage,” ultimately resulting in her leaving the marriage, we found “no error with the chancellor’s decision to place great emphasis” on the misconduct when awarding the husband two thirds of the marital estate. Id. at (¶ 19).
¶ 27. Here, the chancellor found John’s actions had such a negative impact on the harmony and stability of the marriage that the chancellor ordered the record be sealed to stave off any further damage. Thus, we find no error in the chancellor determining John’s misconduct warranted that Jane receive a larger portion of the estate. In fact, Singley, Watson, and Sullivan indicate it would have been an abuse of discretion had the chancellor ignored the pervasive effect of John’s actions on the marriage and divided the estate equally-
¶ 28. John asserts he should not suffer the financial consequences of his actions because they were not willful, but instead stemmed from mental illness. While it was mentioned that John may be mentally ill, John did not seek to prove any mental illness at trial as a defense to Jane’s allegations of habitual cruel and inhuman treatment. See McIntosh v. McIntosh, 151 Miss. 78, 81, 117 So. 352, 353 (1928) (holding that an insane person cannot.act cruelly and inhumanely for purposes of proving statutory grounds for divorce). Nor does he contest on appeal the other consequence of his actions — Jane’s receipt of a fault-based divorce.
¶ 29. Further, it is clear from the chancellor’s findings that his intention was not to “penalize” John but instead to keep from penalizing Jane, who had made extraordinary efforts to keep her marriage together. So stated positively, the chan *864 cellor found Jane was entitled to a greater portion because she had made a greater contribution. See Wells v. Wells, 800 So.2d 1239, 1243 (¶ 8) (Miss.Ct.App.2001) (affirming chancellor’s unequal division in favor of wife, which was based on finding that, “although both parties contributed substantially to the accumulation of property, [the wife] clearly made a greater contribution to the stability and harmony of the marital and family relationship”). We cannot find this was an abuse of discretion.

2. Emotional Value of Assets

¶ 30. John also argues the chancellor ignored his emotional attachment to the-marital assets acquired through his family. But our review reveals that the chancellor did consider John’s emotional attachment to these assets. The very reason the chancellor ordered John to pay ' Jane $186,226.77 in cash was so that John could retain as much of the Jones-family assets as equity would allow, while still ensuring Jane received 62.5% of marital estate.

3. Value of Assets Not Subject to Distribution

¶ 31. This factor requires chancellors to consider both spouses’ separate estates and how their nonmarital property may affect how the marital property is divided. See Deborah H. Bell, Bell on Mississippi Family Law § 6.08[2][c] (2005); see also Welch v. Welch, 755 So.2d 6, 9 (¶ 19) (Miss.Ct.App.1999). In attacking the chancellor’s application of this factor, John does not argue the chancellor failed to consider his and Jane’s nonmarital property. Instead, he merely rephrases his contribution argument — that he should be “credited” with having brought more assets into the marital estate than Jane. The chancellor correctly found that the gifts from John’s family had been converted into marital property through the family-use doctrine. See Stewart, 864 So.2d at 937 (¶ 12) (“Separate property that has been ‘commingled with the joint marital estate’ ... becomes marital property subject to equitable distribution.” (quoting Johnson, 650 So.2d at 1286)); see also Rhodes, 52 So.3d at 438 (¶ 26) (discussing family-use doctrine). Thus, John fails to show what nonmarital assets the chancellor failed to consider.
A Extent to Which Property Division May Eliminate Need for Alimony
¶ 32. Under this factor, the chancellor must consider “[t]he extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties.” Ferguson, 639 So.2d at 928. Here, the chancellor properly balanced this factor against the emotional-value-of-the-assets factor, finding it was better to award Jane a lump-sum of $187,226.77 cash, to be satisfied in periodic payments of $25,000 per year and secured by a lien on assets awarded to John, than award any more Jones-family assets to Jane. So the chancellor actually weighed this factor in John’s favor, finding his emotional attachment to certain assets outweighed any consideration of eliminating the $187,226.77 cash award — a hybrid of lump-sum alimony and property distribution — though awarding Jane more assets.

5. Financial Needs of Parties

¶ 33. John argues the chancellor overestimated his financial security, while underestimating Jane’s. Throughout his brief, John makes general references to his diminished financial state and loss of ability to earn an income and service his debts. But he fails to show how the overall record proves the chancellor’s findings regarding his financial security were manifestly wrong or clearly erroneous. What the record does show is that the chancellor specifically found John had played “fast *865 and loose -with the truth” regarding his current income and expenses. Cf. Clark v. Clark, 754 So.2d 450, 459 (¶¶ 53-54) (Miss.1999) (finding that chancellor, when awarding child support, did not error in imputing greater income to husband based on finding that husband failed to fully disclose his assets and income). And in his brief, John asserts he merely made “guesstimates” about his income and expenses on his Rule 8.05 form. Thus, the chancellor’s findings regarding John’s income and expenses largely came down to an issue of credibility. See Holley, 969 So.2d at 844 (¶ 8). As fact-finder, the chancellor determined John, as a licensed attorney and business owner, had a greater ability to earn an income than Jane. We see no manifest error in this finding.

6. Any Other Equitable Factor

¶ 34. John uses this final factor to make a plea that the property division was not fair. Indeed, “fairness is the prevailing guideline” when dividing marital property. Ferguson, 639 So.2d at 929. But a division does not have to be equal in order to be equitable. Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009) (citing Chamblee v. Chamblee, 637 So.2d 850, 863-64 (Miss.1994)). In fact, fairness may direct an unequal division. E.g., Singley, 846 So.2d at 1008-09 (¶¶ 10-13). Here, the chancellor properly classified and valued the marital assets. He then correctly applied the Ferguson factors, basing his findings on substantial evidence from the record. And he concluded an equitable division of the marital estate would provide Jane 62.5% of the marital assets, with $187,226.77 of her property division to be awarded as lump-sum alimony so John could be awarded more of the Jones-family assets. As the chancellor correctly applied the law and supported his factual findings, we affirm the division of the marital property 62.5%/37.5% in Jane’s favor.

II. “Nominal ” Permanent Alimony

¶ 35. However, we do find manifest error with the award of “nominal” permanent — or periodic — alimony in the amount of $10 per month. See Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993) (reviewing alimony awards for manifest error). We note the chancellor correctly identified and applied the Armstrong factors. See id. But he did so after acknowledging he had made sufficient provision for Jane through the equitable division of the property so that permanent alimony was not needed. Alimony should only be considered if the property division leaves one spouse in a deficit. Johnson, 650 So.2d at 1287. “If there are sufficient assets to provide for both parties, then there is no more to be done.” Carter v. Carter, 98 So.3d 1109, 1112 (¶ 8) (Miss.Ct.App.2012) (citing Johnson, 650 So.2d at 1287).
¶ 36. By referring to the award as “nominal” alimony, it does not appear that the chancellor was trying to address an actual deficit in the property award. Rather, he admits he was simply leaving the door open in case future events prove Jane has a need and John has an ability to pay. Such a contingency plan, while well-meaning, simply is not supported by our law. Alimony is to be considered as a remedy to an actual insufficiency in the marital assets, not as a contingency for a possible insufficiency in the future. Because the chancellor found the division of marital property left no need for alimony, we find it was error for the chancellor to nonetheless award “nominal” alimony. We reverse and render the award of $10 per month in permanent alimony award.

III. Attorney’s and Expert-Witness Fees

¶ 37. We also reverse the award of $18,250 for attorney’s fees and *866 expert-witness expenses. “The question of attorney’s fees in a divorce action is a matter largely entrusted to the sound discretion of the trial court.” Watson v. Watson, 724 So.2d 350, 356-57 (¶ 29) (Miss.1998) (quoting Ferguson, 639 So.2d at 937). But when “a party is financially able to pay her attorney, an award of attorney’s fees is not appropriate.” Id.
¶ 38. In Watson, though “reluctant to disturb a chancellor’s discretionary determination whether or not to award attorney[’s] fees,” the supreme court reversed and rendered an award of attorney’s fees because, “with respect to the financial position of the parties after the divorce decree, it [was] evident that [the wife was] financially able to pay for her own attorney’s fees.” Id. at 357 (¶ 30) (emphasis added); see also Pacheco v. Pacheco, 770 So.2d 1007, 1012-13 (¶¶ 26-28) (Miss.Ct.App.2000) (affirming denial of attorney’s fees because wife’s property award enabled her to pay her attorney’s fees). Here, in finding Jane unable to pay, the chancellor did not consider Jane’s financial position in light of the divorce decree and property division. Jane was awarded almost two hundred thousand dollars in cash, secured by a lien on John’s real property and businesses, a home in Oxford free and clear of any liens, and dividend-paying bank stock, as well as multiple retirement accounts. As in Watson, under the circumstances, we find the award of attorney’s fees and expert-witness expenses to be an abuse of discretion. We reverse and render this portion of the judgment.
¶ 39. THE JUDGMENT OF THE SCOTT COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE DIVIDED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, FAIR AND JAMES, JJ., CONCUR.

. The chancellor has sealed this case as confidential. The names of both parties, as well as other identifiers, have been changed to maintain confidentiality. See M.R.A.P. 48A.

. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).

. Id. at 937.

. John does not challenge the tax-and-economic-consequences factor. And he makes a vacuous argument about the dissipation-of-the-assets factor we need not address.

. The “[cjontribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets” should also be considered. Ferguson, 639 So.2d at 928.