**IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI**

**NO. 2013-CA-01464-COA**

**JEFFREY KEEFE SEALE, SR.**                                                      **APPELLANT**

v.

**CHERIE NANEZ SEALE**                                                              **APPELLEE**

DATE OF JUDGMENT:               07/31/2013
TRIAL JUDGE:                    HON. LAWRENCE PRIMEAUX
COURT FROM WHICH APPEALED:      LAUDERDALE COUNTY CHANCERY
                                COURT
ATTORNEY FOR APPELLANT:         MARTY CRAIG ROBERTSON
ATTORNEY FOR APPELLEE:          ROBERT D. JONES
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:        GRANTED DIVORCE, DIVIDED MARITAL
                                PROPERTY, AND AWARDED ALIMONY
                                TO THE APPELLEE
DISPOSITION:                    AFFIRMED - 11/18/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ROBERTS AND CARLTON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.    Jeffrey Seale Sr. appeals the judgment of the Lauderdale County Chancery Court awarding alimony to Cherie Seale and distributing the couple's marital property. On appeal, Jeffrey raises the following issues: (1) whether the chancellor erred in his classification of certain debts; (2) whether the chancellor erred in his distribution of the couple's marital property; and (3) whether the chancellor erred by awarding permanent alimony to Cherie. Upon review, we find no abuse of discretion by the chancellor and therefore affirm.

**FACTS**

¶2.     After seventeen years of marriage, Jeffrey and Cherie obtained a final judgment of divorce. The parties had two children during the course of their marriage, both of whom were minors at the time of the divorce. At the start of the parties' marriage, Jeffrey worked as a stockbroker, and Cherie worked as an office administrator for a securities firm. Jeffrey later attended and graduated from medical school, completed a residency program, and began working as a physician in Meridian, Mississippi. Although Cherie continued to work while Jeffrey attended medical school, she opted to stay at home and raise the couple's children after the family moved to Meridian.

¶3.     In the proceedings below, the chancellor granted Cherie a divorce on the ground of adultery and awarded her custody of the parties' children. After conducting an analysis of the *Ferguson*[1] factors, the chancellor divided the couple's marital property as follows: (1) Cherie received $77,107 in marital assets and $38,334 in marital debt; and (2) Jeffrey received $31,513 in marital assets and $292,127.12 in marital debt.

¶4.     Based on the parties' respective incomes and the amount of their debt in comparison with their total assets, the chancellor found that the division of the marital estate left Cherie with a "definite deficit." The chancellor therefore conducted an analysis of the *Armstrong*[2] factors to determine whether an award of alimony was appropriate. He concluded that Cherie "should have rehabilitative periodic alimony during a transition period . . . and . . . permanent

---

[1] *Ferguson v. Ferguson*, 639 So. 2d 921, 928-29 (Miss. 1994).

[2] *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).

periodic alimony in a nominal amount." Based on his findings, the chancellor ordered Jeffrey to pay Cherie $1,500 in "rehabilitative periodic alimony" for forty-eight months. The chancellor also ordered Jeffrey to pay Cherie $100 in nominal permanent alimony until Cherie's remarriage or either party's death. Aggrieved by the chancellor's rulings on the issues of distribution of the marital property and permanent alimony, Jeffrey appeals to this Court.

**STANDARD OF REVIEW**

¶5.     "This Court's standard of review in domestic[-]relations matters is extremely limited." *Phillips v. Phillips*, 45 So. 3d 684, 692 (¶23) (Miss. Ct. App. 2010). On appeal, we "will not disturb a chancellor's award of alimony and division of marital assets unless the [chancellor] was manifestly wrong, abused [his] discretion[,] or applied an erroneous legal standard." *Watson v. Watson*, 882 So. 2d 95, 98 (¶14) (Miss. 2004) (citing *Sandlin v. Sandlin*, 699 So. 2d 1198, 1203 (Miss. 1997)). Furthermore, though we only interfere with a chancellor's findings of fact where the chancellor applied an erroneous legal standard or his factual findings were manifestly wrong or clearly erroneous, we review de novo the chancellor's interpretation and application of the law. *Singley v. Singley*, 846 So. 2d 1004, 1006 (¶5) (Miss. 2002).

**DISCUSSION**

**I.     Whether the chancellor erred in his classification of certain debts.**

¶6.     In his first assignment of error, Jeffrey challenges the chancellor's classification of certain debts as either marital or nonmarital. Jeffrey asserts that the chancellor erred by

3

classifying a debt owed to Tony Nanez, Cherie's father, as marital since Cherie used the money to pay for her attorney's fees. Jeffrey also appears to argue that the chancellor improperly classified the unpaid portion of Jeffrey's medical-school debt as nonmarital property.

### a. The Debt Owed to Cherie's Father

¶7. Our caselaw holds that debts acquired during the course of the marriage are subject to equitable distribution. *McLaurin v. McLaurin*, 853 So. 2d 1279, 1285-86 (¶24) (Miss. Ct. App. 2003). "The courts in this state have consistently held that expenses incurred for the family, or due to the actions of a family member, are marital debt and should be treated as such upon dissolution of the marriage." *Shoffner v. Shoffner*, 909 So. 2d 1245, 1251 (¶17) (Miss. Ct. App. 2005).

¶8. The record reflects that, due to Jeffrey's adultery, Cherie incurred the debt at issue to pay for legal representation during her divorce proceedings. Because Cherie incurred the debt during the course of the parties' marriage and as a direct result of Jeffrey's actions, we find no error in the chancellor's classification of the debt as marital. As a result, this argument lacks merit.

### b. The Unpaid Portion of Jeffrey's Medical-School Debt

¶9. On appeal, Jeffrey appears to argue that the chancellor erroneously classified his medical-school debt as nonmarital because the chancellor assigned Jeffrey sole responsibility for the repayment of the debt. In his brief, Jeffrey argues that "the loans for his education should not solely be assigned to him as the funds most certainly were commingled with other

4

income to pay for living and marital/family expense[s]." Despite Jeffrey's assertions, the record fails to indicate that the chancellor classified Jeffrey's medical-school debt as nonmarital.

¶10. Although the chancellor assigned Jeffrey full responsibility for the remainder of the medical-school loans, this fact alone fails to establish that the chancellor erroneously classified the debt as nonmarital. The chancellor clearly acknowledged in his opinion that Jeffrey acquired the debt during the course of the parties' marriage. The chancellor further noted that the proceeds of the loans, along with Cherie's income and other revenue sources, paid for the parties' living expenses while Jeffrey attended medical school. Based on the facts in the record, we find no support for Jeffrey's argument that the chancellor erroneously classified his medical-school debt as nonmarital. As a result, this argument also lacks merit.

## II. Whether the chancellor erred in his distribution of the couple's marital property.

¶11. Jeffrey next argues that the chancellor inequitably distributed the parties' marital property. Jeffrey contends that the chancellor committed clear error by assigning him most of the marital debt and awarding him almost none of the marital assets.

¶12. Our caselaw provides that "an equitable division of property does not necessarily mean an equal division of property." *Chamblee v. Chamblee*, 637 So. 2d 850, 863-64 (Miss. 1994). "Our task is to review the chancellor's findings on the *Ferguson* factors—we do not conduct a *Ferguson* analysis anew." *Carter v. Carter*, 98 So. 3d 1109, 1112 (¶9) (Miss. Ct. App. 2012) (citation and internal quotation marks omitted). As previously discussed, the

5

"chancellor's factual findings will not be disturbed unless manifestly wrong, clearly erroneous, or the chancellor applied an improper legal standard." *Id.* (citation and internal quotation marks omitted).

¶13.    In *Carter*, this Court stated:

> As long as *Ferguson* is properly applied, equitable divisions may indeed be lopsided. And "when the facts and circumstances warrant an equitable division of the marital estate of one-half or greater and such a division complies with the *Ferguson* principles, then we are duty bound to let such a distribution stand." *Phillips v. Phillips*, 904 So. 2d 999, 1003 (¶13) (Miss. 2004). This [C]ourt performed that duty in *Seymour v. Seymour*, 960 So. 2d 513, 519 (¶¶13-15) (Miss. Ct. App. 2006). In that case, we affirmed the chancellor's award of ninety-seven percent of the marital property, including the marital home, to the wife and order that the husband pay the outstanding debt on the marital home, because the facts and circumstances—including the husband's much larger income and separate assets—supported such a division. *Id.*

*Carter*, 98 So. 3d at 1113 (¶12).

¶14.    In the present case, we find that the record contains substantial evidence to support the chancellor's findings of fact and distribution of the marital estate. The chancellor wrote in his opinion that "the answer to the parties' financial security does not lie in the division of the marital estate, due to its lack of liquidity and size. Moreover, the value of the marital estate is almost equal to the marital debt, compounding the difficulty of effecting an equitable division."

¶15.    In analyzing the *Ferguson* factors, the chancellor found that clear and substantial proof existed that Jeffrey's actions destabilized his marriage and damaged his relationship with his children. Although Jeffrey served as the primary wage earner during the parties'

6

marriage, the chancellor found Cherie's indirect contributions to the acquisition of marital assets to be as valuable as Jeffrey's direct contributions. In addition, while Jeffrey's medical degree improved his own earning capacity, the chancellor noted that the pursuit of Jeffrey's career negatively impacted Cherie's earning capacity since she left a more lucrative position for lower-paying employment when the couple moved.

¶16. Concluding his analysis of the *Ferguson* factors, the chancellor stated:

> The disparity in income between the parties is striking and must be taken into account. Cherie earns around $1,500 a month when she works every available day. Jeffrey earns that much in a single shift of emergency room duty. His monthly income is more than ten times greater than Cherie's. As a result, Jeffrey is in a better position [than Cherie] to be able to pay down debt and accumulate wealth . . . .

> The most valuable single marital asset is the equity in the former marital residence. Any division of that equity between the parties will require that it be sold, because neither party has the cash to buy out the other's interest. In his testimony, Jeffrey stated that he wanted his children to continue to live in the residence . . . . The court has taken into account Jeffrey's wish in this regard.

¶17. The chancellor found that Cherie should receive a greater share of the marital estate since "the assets she is receiving are not liquid in any real sense." The chancellor noted that the equity in the former marital home was "locked into the property so long as [Cherie] uses it as shelter for the minor children and herself[.]" The chancellor also noted that, if Cherie later sold the home, she would need the funds to provide a replacement shelter for herself and the children. Based on his application of the *Ferguson* factors, the chancellor distributed the parties' marital estate in the following manner: (1) Cherie received $77,107 in marital assets and $38,334 in marital debt; and (2) Jeffrey received $31,513 in marital assets and

$292,127.12 in marital debt.

¶18.    After reviewing the record and applicable caselaw, we find no manifest error in the chancellor's distribution of the marital estate. *See Watson*, 882 So. 2d at 98 (¶14). The chancellor based his distribution of the marital property on a proper application of the *Ferguson* factors, and the record contains substantial evidence to support his findings. Accordingly, this assignment of error lacks merit.

### III.    Whether the chancellor erred by awarding permanent alimony to Cherie.

¶19.    Jeffrey also argues that the chancellor erred by awarding Cherie permanent alimony. "Alimony awards are within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his finding of fact and abused his discretion." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993) (citations omitted). "Alimony should only be considered if the property division leaves one spouse in a deficit." *Jones v. Jones*, 2011-CA-01440-COA, 2013 WL 1800051, at *8 (¶35) (Miss. Ct. App. Apr. 30, 2013) (citation omitted). "If there are sufficient assets to provide for both parties, then there is no more to be done." *Id.* (citation omitted).

¶20.    In *Jones*, this Court found manifest error in the chancellor's award of nominal permanent alimony because the chancellor applied the *Armstrong* factors "after acknowledging he had made sufficient provision for [the wife] through the equitable division of the property so that permanent alimony was not needed." *Id.* In reversing the chancellor's award of alimony, this Court stated:

By referring to the award as "nominal" alimony, it does not appear that the chancellor was trying to address an actual deficit in the property award. Rather, he admits he was simply leaving the door open in case future events prove [the wife] has a need and [the husband] has an ability to pay. Such a contingency plan, while well-meaning, simply is not supported by our law. Alimony is to be considered as a remedy to an actual insufficiency in the marital assets, not as a contingency for a possible insufficiency in the future. Because the chancellor found the division of marital property left no need for alimony, we find it was error for the chancellor to nonetheless award "nominal" alimony.

*Id.* at (¶36).

¶21. On appeal, Jeffrey argues that the chancellor erroneously based the award of permanent alimony on Cherie's possible future needs and his possible future income. The record reflects, however, that the chancellor found the division of Jeffrey and Cherie's marital estate left Cherie with a "definite deficit" and failed to provide her with any lasting financial security. The chancellor's finding that Cherie still suffered a deficit after the equitable distribution of the couple's marital estate distinguished this case from *Jones* and provided the evidentiary basis required by precedent to consider an award of alimony. *See id.* at (¶35). The chancellor therefore proceeded with an analysis and application of the *Armstrong* factors.

¶22. In determining alimony to be proper, the chancellor stated:

With several years of financial support, which will afford her a transition period between this marriage and a more financially fruitful life, [Cherie] will hopefully be in a position to achieve a financial recovery. This consideration . . . weigh[s] in favor of a period of rehabilitative alimony[, which] . . . . is intended to prevent the recipient from being destitute.

On the other hand, it seems inequitable to allow Jeffrey the possibility to rebuild his life financially and enjoy the accumulation of wealth that Cherie

9

would have participated in but for the breakup of the marriage. In his present financial state, at least according to the picture he presented to the court, it would seem unlikely that he could do so. Yet, if he has not been entirely forthcoming about his finances, he could rebound quickly. In the latter circumstance, it would be inequitable for Cherie to be precluded from enjoying her former standard of living. This consideration weighs in favor of permanent periodic alimony, since the purpose of permanent periodic alimony is to preserve the marital standard of living following a lengthy marriage.

The court finds that, in order to effect a financial remedy for this situation, Cherie should have rehabilitative periodic alimony during a transition period . . . and . . . should have permanent periodic alimony in a nominal amount.

¶23. As acknowledged, the chancellor determined after equitable distribution of the marital estate that Cherie suffered a deficit. As further recognized, our precedent allows the award of alimony upon the finding of such a deficit. *See Jones*, 2013 WL 1800051, at *8 (¶35). After finding that a deficit existed, the chancellor awarded Cherie transitional rehabilitative alimony for forty-eight months and $100 in permanent alimony thereafter.[3] We review the amount of an alimony award by a chancellor for manifest error. *See Armstrong*, 618 So. 2d at 1280. In so doing, we find no abuse of discretion in the present case since the evidence in the record supports the chancellor's determination regarding the amount and type of alimony awarded to Cherie. *See id.*

¶24. In accordance with our caselaw, the chancellor considered alimony only after

---

[3] We acknowledge that the chancellor used the term "nominal amount" in referring to the award of permanent alimony. The use of the term "nominal" could be misleading since the term could imply that the alimony was not warranted. However, we acknowledge in this case the chancellor's finding that an evidentiary basis existed to establish that Cherie suffered a deficit following the distribution of the marital estate.

10

determining that the division of property left Cherie with a deficit. *See Jones*, 2013 WL 1800051, at *8 (¶35). The chancellor then applied the *Armstrong* factors to the present case. Unlike in *Jones*, the record reflects that the chancellor awarded Cherie rehabilitative alimony for a transitional period and then awarded her permanent alimony in a nominal amount "as a remedy to an actual insufficiency in the marital assets," rather than "as a contingency for a possible insufficiency in the future." *Id.* at (¶36). As a result, we find this argument lacks merit.

¶25. **THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**